UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NICHOLAS B., :
       Plaintiff, :
    :
      v. : C.A. No. 22-21WES
    :
KILOLO KIJAKAZI, :
Acting Commissioner of Social Security, :
       Defendant. :

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On August 30, 2018, Plaintiff Nicholas B. ("Plaintiff"), a "younger individual" with no work history,[1] who has long suffered from severe asthma and chronic obstructive pulmonary disease ("COPD"), as well as alcoholism, drug addiction and other mental health impairments,[2] filed his second application for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Tr. 234-36. An administrative law judge ("ALJ") relied on the evidence and what she found to be the persuasive findings of the non-examining expert physician (Dr. Elaine Hom) to determine that asthma and COPD, while significantly limiting, did not meet or equal the severity level in the relevant "Listings," (Listing 3.02, Chronic Respiratory Disorder; Listing 3.03, Asthma), 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 24-34. The ALJ also relied on the findings of the non-examining expert psychiatrist (Dr. Susan Killenberg) and psychologist (Dr. Clifford Gordon), who found that, in the absence of drugs and alcohol, Plaintiff

---

[1] The medical record contains passing references to Plaintiff's statements that he had been or was working. For example, in November 2018, Dr. Meaghan Grant noted, "[w]orks at a bar and people buy him drinks." Tr. 1548. However, as confirmed by the employment record, Tr. 213, at the ALJ's hearing, Plaintiff testified that he had never worked full time. Tr. 45.

[2] These include the diagnosed conditions of anxiety, depression, personality disorder, bipolar disorder, and the alleged conditions of attention deficit hyperactivity disorder ("ADHD"), obsessive compulsive disorder ("OCD") and memory loss due a concussive head injury. See, e.g., Tr. 234, 1542, 1552-55, 1969-70, 2768-69.

suffers from moderate mental limitations. Tr. 31. The ALJ treated as less persuasive their opinions that drug/alcohol addictive disease was materially disabling and rejected as unpersuasive the opinion, signed by the treating primary care physician (Dr. Grant), that Plaintiff has disabling mental health limitations to which drugs and alcohol do not contribute. Id.

Based on these findings, her review of the evidence and her determination that Plaintiff's subjective statements about the severity of his symptoms were not entirely consistent with the evidence, the ALJ found that, despite the ongoing use of drugs and alcohol, Plaintiff retained the residual functional capacity ("RFC")[3] to perform unskilled/unpressured light work, with additional limits on interactions with people and on standing and walking, and with postural and environmental limitations, including the need to work in "an OSHA [Occupational Safety and Health Administration] compliant work environment." Tr. 27; see Tr. 27-32. This RFC resulted in the conclusion that Plaintiff was not disabled at any relevant time. Tr. 32-33. Based on this conclusion of no disability, the ALJ did not separately analyze whether Plaintiff's alcoholism and drug use were material to disability.[4]

Now pending before the Court and referred to me for report and recommendation is Plaintiff's motion for reversal of the determination of the Acting Commissioner of Social Security ("Commissioner") denying his claim. ECF No. 14. The Commissioner has filed a counter motion for an order affirming her decision. ECF No. 16.

I.    **Background**

    A.    **Respiratory Impairments**

---

[3] RFC refers to "residual functional capacity." It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 416.945(a)(1).

[4] Plaintiff has not challenged this aspect of the ALJ's analysis.

Based on a prior disability application in 2009, Plaintiff's respiratory impairments (asthma and COPD) resulted in a finding of disability because they then met the requirements for Listing 3.03(B). Tr. 68. However, in 2017, based on the determination of an ALJ, these impairments were found to have medically improved to the point where Plaintiff was no longer disabled as of February 2016. Tr. 68, 73.

For the current application, Plaintiff applied for SSI benefits on August 30, 2018. That day is also alleged to be the new date of onset of disability. During the current period, Plaintiff was treated for "COPD exacerbation" once (in January 2019) via a brief hospitalization during which Plaintiff's shortness of breath improved at admission, he was able to walk up and down comfortably, including to walk outside to smoke, and he was discharged as medically stable with the advice to quit smoking. Tr. 2300-2302. Otherwise, Plaintiff received pulmonary care from a pulmonologist, Dr. Neil LaBove, who saw him once or twice a year. E.g., Tr. 2563. Dr. LaBove diagnosed severe persistent asthma/COPD exacerbated by cigarette smoking. Tr. 2563, 2651-52.

Four months prior to the period in issue (on April 10, 2018), Dr. LaBove recorded an "$FEV_1$"[5] of 1.27,[6] Tr. 2575, and opined that Plaintiff was "unable to work." Tr. 2566. Thereafter, several months into the period in issue, Plaintiff reported to Dr. Grant that his "breathing is much improved," Tr. 1556, and, in April 2019, he told Dr. LaBove that "his breathing is doing better than when [he] saw him a year ago." Tr. 2563. Dr. LaBove noted that

---

[5] As described in Listing 3.00 (Respiratory Disorders), "[s]pirometry, which measures how well you move air into and out of your lungs, involves at least three forced expiratory maneuvers during the same test session." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00(E)(1). A forced expiratory maneuver is "a maximum inhalation followed by a forced maximum exhalation, and measures exhaled volumes of air over time." Id. "The volume of air you exhale in the first second of the forced expiratory maneuver is the $FEV_1$." Id.

[6] If it pertained to the period in issue and was found to be a result that satisfies the strict requirements for qualifying spirometry testing, this $FEV_1$ score would meet Listing 3.02 and compel a finding of disability. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 3.00(E)(1), 3.02(A), tbl. I. However, apart from the problem with timing, it is far from clear that this result would meet the Listing because it was qualified by the caution that it reflected "[o]nly [o]ne [a]cceptable [m]aneuver" and should be "interpret[ed] with care." Tr. 2575.

Plaintiff had been hospitalized in January 2019 for "COPD exacerbation," but he continued Plaintiff on the treatment previously prescribed. Tr. 2563-64. At the October 2019 appointment, Dr. LaBove found that, "[s]ince I saw him in April, his breathing is about the same." Tr. 2624. Shortly before the ALJ hearing, on February 20, 2020, Plaintiff returned to Dr. LaBove, who performed spirometry testing and obtained a materially improved (from the pre-onset score) $FEV_1$ reading of 2.33.[7] Tr. 2778. The record does not reflect that this test result led to any adjustments in Plaintiff's respiratory treatment.

Both prior to and during the period in issue, Dr. LaBove repeated his medical advice that Plaintiff should stop smoking ("heavily counseled on total and complete cigarette smoking cessation"), noting, "[a]s long as he [is] smoking, other types of asthma therapy are not possible." Tr. 2563-64, 2625. In October 2019, Dr. LaBove strongly advised against any inhalants, especially cigarettes. Tr. 2625. While the record reflects Plaintiff's claim that he cut back on cigarettes, e.g., Tr. 46, Plaintiff concedes that he has not complied with this medical advice, but has continued to smoke, including while hospitalized for "COPD exacerbation." Tr. 2300. In January 2019, Plaintiff advised an intake counselor at Phoenix House that he has never tried to quit and did not wish to quit the use of nicotine products. Tr. 2441.

Plaintiff's respiratory impairments were also monitored by Dr. Grant and others at Thundermist. The Thundermist records reflect observations of Plaintiff's lung function, sometimes noting that his breathing was clear with no issues, e.g., Tr. 1578, 2542, 2544, but, at other times, noting wheezing or that the air exchange was fair to poor, Tr. 1548, 2550. However,

---

[7] This $FEV_1$ score does not meet or equal Listing 3.02. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.02(A), tbl. I. It potentially meets one of the prongs for Listing 3.03, but the second prong requires at least three qualifying hospitalizations, which the record does not establish. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 3.03(A), tbl. VI, 3.03(B).

the Thundermist notes reflect that Dr. Grant was relying on Dr. LaBove as the principal treating specialist for Plaintiff's pulmonary impairments. E.g., Tr. 2550-51, 2643.

B.  **Mental Health Impairments**

During the 2016/2017 ALJ examination of whether Plaintiff's respiratory impairments had medically improved, Plaintiff also alleged that he suffered from an affective disorder, anxiety, personality disorder and substance use disorder. Tr. 69-70. As reflected in the 2017 decision, that ALJ relied on a consultative psychological evaluation of Plaintiff and found that anxiety and substance use disorder were severe at Step Two, but that the alcohol use disorder was moderate and crack/cocaine disorder was in self-reported remission, while anxiety was largely mild, moderately impacting only social functioning. Tr. 72. Based on these findings, the prior ALJ issued a decision on October 4, 2017, holding that Plaintiff was able to perform medium work with environmental limitations and a limitation to only occasional contact with the public, co-workers and supervisors. Tr. 68-78.

During the current period (beginning on October 30, 2018), based on the Court's review of the entirety of the nearly three-thousand-page record in this case, it appears that the medical condition that dominated Plaintiff's treatment is addictive disease, particularly alcoholism. Over and over, Plaintiff was treated at Kent Hospital, Butler Hospital, the Providence Center ("TPC") and Phoenix House for alcohol detoxification and intensive follow-up treatment and for treatment in connection with the use of other substances (e.g., opioids, "benzo's" and marijuana). E.g., Tr. 1358, 1975, 2196, 2419-20, 2735-36. These courses of treatment span the entire period in issue, in that there appears to be no significant period of sustained sobriety.[8] The last such

---

[8] There is potentially one such period – a Butler Hospital discharge summary states that Plaintiff had been sober for eighteen months before a relapse in the fall of 2019. Tr. 2768. Yet the record contains references to alcohol use and "detox" during the supposed eighteen-month period of sobriety. E.g., Tr. 2244 (in January 2019, "[c]urrently his [alcohol] detox is now complete and he is on suboxone"); Tr. 2595 (in June 2019, Plaintiff drank for three days after

5

course of treatment ("referred . . . for detox") was in January 2020 at Butler Hospital, Tr. 2762-77, just a month prior to the ALJ hearing.  As the Thundermist treating source responsible for medical management explained following a mental status evaluation ("MSE")[9] in March 2019: "[c]lient reports struggling with alcohol use disorder since teenage[] years with longest period sober being 3 months May-July 2018, unable to truly diagnos[e] his mood/anxiety disorder accurately until a longer period of sobriety has been obtained."  Tr. 2548.

Despite this intensive pattern of repeated hospital (emergency and in-patient) and residential treatment for alcoholism and substance abuse, throughout the period in issue, MSEs were performed by a wide array of treating sources; these sometimes reflect anxiety and depression and sometimes good or appropirate mood, but generally reflect cooperative behavior, adequate attention and concentration, good eye contact and no symptoms of mania or psychosis.  E.g., Tr. 2193, 2434, 2544, 2736, 2771-72.  Further, one provider recorded Plaintiff's statement "that the majority of his anxiety stemmed from gettting sober, and finding placement."  Tr. 2302.  Another noted in December 2018, "[a]t present, stable: no acute alcohol withdrawal or any psych issues."  Tr. 2193 (emphasis supplied).  With few exceptions, Plaintiff's primary care physician, Dr. Grant, recorded MSE observations of good eye contact, oriented to person, place and time, and appropriate mood and affect.  E.g., Tr. 1548, 2550.

## II.     Standard of Review

---

leaving sober house); see Tr. 1975 (Plaintiff reports that his "[l]ongest period of sobriety was from Jul[y] 22 and Aug[ust] 22 during his incarceration.").

[9] A mental status examination or "MSE" is an objective clinical assessment of an individual's mental ability, based on a health professional's personal observation, where "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation."  Nancy T. v. Kijakazi, C.A. No. 20-420WES, 2022 WL 682486, at *5 n.7 (D.R.I. Mar. 7, 2022), adopted by text order (D.R.I. Mar. 31, 2022); Lilibeth G. v. Kijakazi, C.A. No. 20-474WES, 2021 WL 5049377, at *1 n.4 (D.R.I. Nov. 1, 2021), adopted, 2021 WL 5631745 (D.R.I. Dec. 1, 2021).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000).  Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).  The determination of substantiality is based upon an evaluation of the record as a whole.  Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).  Thus, the Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30.  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the law was incorrectly applied, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g).  Allen v. Colvin, C.A.

No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015) (citing Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir. 1996)).

## II.     Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(i); 20 C.F.R. § 416.905(a).  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 416.905-911.

### A.     The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 416.920(a).  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  Id. § 416.920(a)(4). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  Id. § 416.920(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  Id. § 416.920(d).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  Id. § 416.920(e)-(f).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  Id. § 416.920(g).  The claimant bears the burden of proof at Steps One through Four, but it shifts to the Commissioner at Step Five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003).

### B. Step Three Determination

At Step Three, the ALJ examines whether the claimant's physical and mental impairments are severe enough to "meet or equal" any of the Listings. 20 C.F.R. § 416.920(a)(4)(iii); 920(d). The ALJ is not required to provide a detailed explanation of the basis for her Step Three finding. Edwin L. v. Kijakazi, C.A. No. 21-00359-MSM, 2022 WL 2229509, at *6 (D.R.I. Apr. 25, 2022) (citing SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017)) ("Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding."), adopted, 2022 WL 2212690 (D.R.I. June 21, 2022). The "claimant bears the burden of proving that she meets or equals a listing." Canales ex rel. Pagan v. Astrue, No. CA 07-474ML, 2009 WL 2059716, at *6 (D.R.I. July 13, 2009). "An ALJ does not err by finding that a claimant does not meet or equal a listing where no medical opinion substantiates that the claimant's condition meets or equals a listing." Id. An ALJ's reliance at Step Three on the persuasive findings of a non-examining expert provides adequate support for the determination that a Listing is not met or equaled. See Schmidt v. Comm'r of Soc. Sec., No. 14-13885, 2015 WL 12731912, at *7 (E.D. Mich. Oct. 26, 2015), adopted, 2016 WL 491711 (E.D. Mich. Feb. 9, 2016) (Step Three finding unsupported because non-examining source misinterpreted the reason for many hospitalizations). "'Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively.'" Lindsay M. v. Kijakazi, No. 2:21-cv-02063-EFM, 2022 WL 612452, at *5 & n.56 (D. Kan. Mar. 2, 2022) (quoting Jennifer M. A. v. Saul, CIVIL ACTION No. 20-2159-JWL, 2021 WL 1056426, at *3 (D. Kan. 2021)).

### C. Opinion Evidence

An ALJ must consider the persuasiveness of all medical opinions in a claimant's case record. See 20 C.F.R. § 416.920c. The most important factors to be considered when the Commissioner evaluates the persuasiveness of a medical opinion are supportability and consistency; these are usually the only factors the ALJ is required to articulate. 20 C.F.R. § 416.920c(b)(2); Jones v. Berryhill, 392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug. 6, 2019). Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding[] is with other evidence in the claim." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017). Other factors that are weighed in light of all of the evidence in the record includes the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding. See 20 C.F.R. § 416.920c(c)(1)-(5); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5859. "A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion." Id. at 5854.

    D.    **Drug and Alcohol Abuse**

It is the policy of Congress "not to have the Social Security system subsidize alcoholism." Brown, 71 F. Supp. 2d at 29. To implement this policy, since 1996, the Act has required the denial of disability benefits if alcohol or drug abuse comprises a contributing factor material to the determination of disability. See 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 416.935. If the claimant is under a disability and there is medical evidence of alcoholism or substance addiction, the ALJ must determine the impact of the addiction on the claimant's disability. 20

C.F.R. § 416.935(a); see 42 U.S.C. § 423(d)(2)(C). "The 'key factor' to be considered, in fact the only factor mentioned in the regulations, is whether the claimant would still be disabled absent the drug addiction or alcoholism." Brown, 71 F. Supp. 2d at 35 (quoting 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1)). How to perform the materiality determination is explicated in SSR 13-2p, 2013 WL 621536 (Feb. 20, 2013), which makes plain that it applies only if the claimant has a medically determinable substance use disorder and there is a determination of disability. Id. at *4. That is, if the claimant is found to be not disabled despite the abuse of drugs and alcohol, there is no need to perform the materiality analysis. If it is performed, "[t]here does not have to be evidence from a period of abstinence for the claimant to meet his or her burden of proving disability." Id.; see Meaghan D. v. Kijakazi, C.A. No. 22-00033-WES, 2022 WL 10338023, at *7 (D.R.I. Oct. 18, 2022), adopted by text order (D.R.I. Nov. 14, 2022).

### III.  Analysis

Plaintiff presents four arguments to support his contention that the Court should remand this matter for further proceedings. None is availing.

First, Plaintiff argues the ALJ erred in performing the Step Three analysis to conclude that Plaintiff's respiratory impairments (asthma and COPD) do not meet or equal either Listing 3.02 or Listing 3.03. ECF No. 14 at 11-12. The thrust of Plaintiff's challenge is that the ALJ's explanation for the determination lacked sufficient detail in that it did not itemize every reference to an $FEV_1$ score in the record. See id. This argument fails because the ALJ's Step Three discussion correctly sets out the Listing standard, accurately identifies the pertinent evidence, including that the only potentially qualifying test result is prior to the period in issue,[10] and finds

---

[10] Plaintiff's only $FEV_1$ performed during the period in issue was done shortly before the ALJ hearing; at $FEV_1$ 2.33, Tr. 2778, it does not qualify for Listing 3.02 and would qualify for a Listing 3.03 only if Plaintiff also had three qualifying hospitalizations, which he did not have. See n.6, *supra*.

that neither Listing is met or equaled. See Edwin L., 2022 WL 2229509, at *6. As the Commissioner correctly points out, all of the $FEV_1$ scores on which Plaintiff relies include vague references to "last testing" with no date indicated, are outside the period in issue, or are too high to establish Listing-level severity. See ECF No. 16 at 4-9 (referencing Tr. 2563, 2569, 2575, 2624, 2778-80). Further, the ALJ's determination is well supported, including by the findings of Dr. Hom, the non-examining expert who expressly interpreted Plaintiff's clinical pulmonary findings as pertinent to the Listing analysis and found that Plaintiff retained the RFC to work. Tr. 107-09. Nor is there an opinion from any source establishing that Plaintiff's pulmonary impairments met or equaled any Listing during the period in issue. See Canales, 2009 WL 2059716, at *6 (no error at Step Three if no medical opinion substantiates claim that condition meets or equals listing). And Plaintiff himself conceded through counsel during the ALJ's hearing that "the current testing doesn't show listing level," arguing instead that, "even if Mr. [B.] doesn't meet listed impairment 3.02, we contend . . . he would be unable to sustain work." Tr. 44-45. I find that no error taints the ALJ's Step Three analysis.

Plaintiff's second claim of error focuses on the testimony of the vocational expert ("VE"). He argues that the ALJ's hypothetical question contained a limitation ("work in an OSHA compliant work environment") that the VE could not have understood because OSHA has not promulgated indoor air quality standards. ECF No. 14 at 13. Plaintiff acknowledges that OSHA has promulgated guidelines.[11] More importantly, Plaintiff made no objection to the ALJ's hypothetical when it was propounded to the VE and was afforded the opportunity to

---

[11] Cited in Plaintiff's brief and readily available on the internet are OSHA's Indoor Air Quality in Commercial and Institutional Buildings Guidelines, OSHA 3430-04 (2011), https://www.osha.gov/sites/default/files/publications/3430indoor-air-quality-sm.pdf. Written to protect against adverse health conditions such as "[a]sthma, cough wheezing, shortness of breath," Plaintiff argues that this publication establishes guidelines, but not a "general IAQ standard." See id. at 4, 9.

12

question the VE about how she interpreted the OSHA limitation yet asked no questions.[12]  Tr. 62-63.  Nevertheless, because the VE herself did not ask for clarification, Plaintiff asks the Court to remand the case so that further inquiry may be conducted although he presents nothing to explain why such an exercise might yield material information.

This argument fails not only because it is both undeveloped and waived by Plaintiff's failure to raise it during the hearing, but also because there is nothing *per se* confusing or vague about an RFC limitation based on OSHA compliance.  See Mills, 244 F.3d at 8.  Numerous courts have entertained matters with an analogous limitation with no objection from the claimant and no expression of confusion by the VE.  See, e.g., Ryion v. Comm'r of Soc. Sec., 19-CV-169Sr, 2020 WL 5569801, at *1 (W.D.N.Y. Sept. 17, 2020) ("VE testified that plaintiff could do his past work so long as his employer was compliant with OSHA standards regarding pulmonary irritants"); Robinson v. Comm'r of Soc. Sec., No. 1:16-CV-00648 (MAT), 2018 WL 3583236, at *1 (W.D.N.Y. July 26, 2018) (RFC included limitation of no work in an environment with pulmonary irritants such as gases, dust, or fumes above OSHA standards); Huffman v. Colvin, No. CV 15-2210-PLA, 2015 WL 8664151, at *2-3 (C.D. Cal. Dec. 11, 2015) (RFC included need to avoid exposure per OSHA limits); Lorsung v. Astrue, No. 4:10CV3213, 2012 WL 1015247, at *9 (D. Neb. Mar. 26, 2012) (VE's consideration of limit based on OSHA rules for air quality insufficient because claimant was sensitive to flowers and perfumes, which are not mentioned in OSHA rules).

---

[12] For this reason, I alternatively recommend that the Court reject this argument as waived.  See Mills v. Apfel, 244 F.3d 1, 8 (1st Cir. 2001) ("The impact of a no-waiver approach . . . at the ALJ level . . . could cause havoc, severely undermining the administrative process."); Medeiros v. Saul, Civil No. 19-11079-LTS, 2020 WL 4583871, at *5-6 (D. Mass. Aug. 10, 2020) (argument waived when claimant's attorney "failed to object to the ALJ's questioning of the VE during the hearing, asked no questions himself of the VE . . . and did not otherwise preserve th[e] challenge at the ALJ hearing").

Third, Plaintiff argues that the VE testified to a number of jobs that included full-time and part-time jobs but failed to allocate them between each category. ECF No. 14 at 14; see Tr. 62. This argument fails because it is based on an incorrect premise. As the transcript reveals, after the VE testified that she had provided a number that included part-time jobs, the ALJ asked for the allocation, Tr. 63, which the VE provided. The ALJ then used the VE's answer to allocate and showed her allocation in her decision. Tr. 33. That is, the ALJ's decision is expressly based on the number of full-time jobs, with part-time jobs excluded using a calculation supported by the VE's testimony.

Plaintiff's fourth argument is focused on the ALJ's treatment of the RFC opinion of Dr. Grant, the treating primary care physician, who opined to significant mental limitations. ECF No. 14 at 14-15; Tr. 2626-29. The ALJ found the opinion to be unpersuasive because it is inconsistent with the MSEs in the Thundermist treating notes and with the other MSEs of record. Tr. 31-32. The Court's review of the evidence establishes that the ALJ's reasoning is well supported. Both Dr. Grant herself and her colleagues at Thundermist regularly recorded relatively benign MSE observations of Plaintiff. See, e.g., Tr. 1548 (Dr. Grant notes "PSYCH good eye contact, oriented [to person, place and time], appropriate mood and affect."); Tr. 1554 (Thundermist psychiatric nurse practitioner notes polite and cooperative but anxious, with fair eye contact, memory intact and attention appropriate); Tr. 2542 (Thundermist family nurse practitioner notes "PSYCH good eye contact, appropriate mood and affect"). Other providers made similar observations. See, e.g., Tr. 2193-94 (physician at TPC notes claimant is stable with no "psych issues"; MSE entirely benign). As Dr. Grant's treating note of June 26, 2019, confirmed, her primary concern was the risk of alcohol relapse "even with small amounts of [alcohol]." Tr. 2592 (no reference to any current mental health conditions except alcoholism and

substance use disorder). I find that the ALJ did not err in finding that Dr. Grant's opinion clashes with the balance of the treating record (including Dr. Grant's own notes) and therefore is unpersuasive.

Plaintiff's last claim of error is that the ALJ included Plaintiff's continued smoking, despite strong medical advice to stop completely, among other unchallenged reasons[13] to discount Plaintiff's subjective claim that asthma/COPD made it difficult for him to walk for more than two minutes. ECF No. 14 at 15-16. In finding that Plaintiff's subjective statements overstated his limitations, the ALJ relied *inter alia* on the extensive record evidence of the medical advice that asthma and COPD were exacerbated by any smoking or inhalation, including that Dr. LaBove told Plaintiff that certain asthma treatment would not be available to him unless he achieved "total and complete cigarette smoking cessation." Tr. 2563-64; see, e.g., Tr. 2625, 2651-52. Thus, the evidence here is distinctly different from that in Shramek v. Apfel, where the court found that "no medical evidence directly linked" smoking to the plaintiff's impairments. 226 F.3d 809, 813 (7th Cir. 2000). I find no error in the ALJ's reliance on Plaintiff's disinclination to stop smoking as evidence that his symptoms are not as severe as he claims. See Crowley v. Saul, Case No. 19-cv-650-JL, 2020 WL 615094, at *8 (D.N.H. Feb. 10, 2020) ("fact that [claimant] continued smoking against medical advice is a factor the ALJ properly considered in discounting his subjective complaints of disabling conditions"); Hadley v. Colvin, No. 2:14-cv-77-JHR, 2014 WL 7369501, at *4 (D. Me. Dec. 28, 2014) ("noncompliance with medical advice to cease smoking is a permissible basis on which to discount" subjective complaints).

---

[13] This supports an alternative reason for the Court to reject this argument in that any error the ALJ may have made in mentioning Plaintiff's smoking does not require reversal in light of the sufficiency of the ALJ's remaining reasons for discounting Plaintiff's subjective statements, for example, their inconsistency with "the objective examination findings and the nature and scope of his treatment," Tr. 28. See Jennifer C. v. Saul, No. 18 C 1243, 2019 WL 4345344, at *9-10 (N.D. Ill. Sept. 12, 2019).

15

V.      **Conclusion**

Having reviewed the entirety of this record, I find that the ALJ's findings are consistent with applicable law and sufficiently supported by substantial evidence. Accordingly, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 14) be DENIED and Defendant's Motion to Affirm the Commissioner's Decision (ECF No. 16) be GRANTED. Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
February 7, 2023